THE STATE OF CONNECTICUT *vs.* WILLIAM SPITTLER ET ALS.

First Judicial District, Hartford, October Term, 1906.
BALDWIN, HAMERSLEY, HALL, PRENTICE and SHUMWAY, JS.

The contract of a surety is to be construed strictly, both at law and in equity, and his liabilities are not to be extended by implication beyond the precise terms and scope of his engagement.

Having been appointed temporary receivers in vacation, two of the defendants, Spittler and Corbin as principals, and the third defendant as surety, gave a joint and several bond, the condition of which, after reciting such appointment, provided that if the appointees should well and truly perform their duties under such appointment, and under any future confirmation or appointment either as temporary or permanent receivers, then the bond should be void, otherwise in full force and effect. *Held* that this language clearly contemplated and provided for an original joint or associated receivership, and also for its continuance by confirmation or reappointment; that there was an entire absence of any suggestion of a willingness upon the part of the signers to become responsible for the faithful discharge of the duties of the receivership after a severance of the joint relation; and therefore upon the termination of the dual receivership and the substitution of Spittler as sole permanent receiver, the situation with reference to which the bond was given ceased to exist, and its

signers, other than Spittler, were not liable for his subsequent misconduct.

It appeared that the trial court, in its order appointing Spittler as sole permanent receiver, directed that the bond on file should be continued in force for said receiver. *Held* that the mere fact that Corbin united with Spittler in asking for the appointment of a permanent receiver or receivers—a perfunctory duty required of the temporary receivers under the Rules of Court, p. 23, § 51—did not make him in anywise responsible for the action of the court in continuing the old bond, nor cast upon him any duty of calling for a new one; that he was justified in assuming the proper and lawful course would be taken in the qualification of his successor, and that no use would be made of the bond on file which its terms did not warrant.

Where the fundamental question in the case is presented by a demurrer to the answer, it is unnecessary to go further back and pass upon the correctness of a ruling made upon demurrer to the complaint.

Ordinarily the obligation of a coprincipal in a bond is coextensive with that assumed by the surety.

Argued October 2d, 1906—decided March 5th, 1907.

ACTION on a receivers' bond, brought to the Superior Court in Litchfield County where demurrers to the complaint, filed by the defendants other than Spittler, who made no defense, were overruled (*Gager, J.*), while those filed by the plaintiff to the respective answers of the other two defendants were sustained (*Reed, J.*), and judgment was afterward rendered (*Case, J.*) for the plaintiff against all the defendants, from which the defendants other than Spittler severally appealed. *Error and judgment reversed.*

The complaint stated this case: On September 3d, 1904, Spittler and Corbin were, in vacation and upon a complaint returnable to the Superior Court in Litchfield County on the first Tuesday of September, 1904, appointed receivers of the Vulcan Manufacturing Company, and on that day a joint and several bond for $20,000 was given to the State, executed by them as principals and the United States Fidelity and Guaranty Company as surety, conditioned for the faithful performance by Spittler and Corbin of their duties as such receivers. On March 5th, 1905, Spittler was removed by the court from the receivership, and

one Bierce appointed permanent receiver. On May 1st, 1905, upon a hearing of Spittler's account as receiver, it was found by the court that there was due from him $2,871.65, and his successor was ordered to demand payment, and in default thereof authorized to institute suit against Spittler and his sureties. Demand has been made on the defendants, and payment refused, and said sum remains unpaid.

Corbin's answer alleged that said appointment of Spittler and Corbin was as temporary receivers; that the condition of the bond given by them was that if they (the principals) "shall well and truly perform their duties under such appointment and in the event that they shall hereafter, at any time or times be confirmed or appointed in said action, either as temporary or permanent receivers of said Vulcan Manufacturing Company, as aforesaid, their duties as such receivers, then this obligation shall be void, otherwise in full force and effect"; that on October 7th, 1904, the court, following an application for the appointment of a permanent receiver or receivers filed by said temporary receivers, appointed said Spittler as sole permanent receiver, and that from and after that date said Corbin ceased to be or to act as a receiver of said company, or to participate in the management of the affairs of said receivership; that upon said day said Spittler and Corbin filed in court their account as temporary receivers to that date; that the same was thereupon approved and accepted by the court; and that the defalcation or misfeasance of Spittler, if any there was, occurred after said date. The order appointing Spittler as permanent receiver, which was made a part of the answer, decrees that the bond on file be "continued in force for said permanent receiver."

The answer of the surety company set up substantially the same facts pleaded by Corbin, and also denied any default by Spittler as permanent receiver.

*James E. Cooper*, with whom was *John H. Kirkham*, for the appellant Frank E. Corbin (defendant).

*Richard T. Higgins*, for the appellant, the United States Fidelity and Guaranty Company (defendant).

*Frank B. Munn* and *Edward H. Rogers*, for the appellee (the plaintiff).

PRENTICE, J.　It is unnecessary to pass upon the correctness of the court's rulings upon the demurrers to the complaint. The answers brought upon the record the condition of the bond in suit, and the demurrers to those answers present in clear relief, among other incidental questions, those which must be decisive of the case. *Mechanics Bank* v. *Woodward*, 74 Conn. 689, 691, 51 Atl. 1084. The primary question relates to the construction to be given to the condition of the bond sued upon. It is clear and conceded that the bond was, as against the Guaranty Company, security for the defaults of either Spittler or Corbin, or both, prior to the time when the latter ceased to be a receiver. It is also clear, if not conceded, that it would have remained such security during any continuance of the joint receivership relation, whether under their original appointment or any new appointment or confirmation, and whether that new appointment or confirmation assumed to style them temporary or permanent receivers, or receivers only. It is also, we think, clear, although not established by a uniform current of authorities and not conceded at least by Corbin, that his obligation to the State would under the conditions stated have been co-extensive with that assumed by the Guaranty Company. *Babcock* v. *Hubbard*, 2 Conn. 536 ; *Brazer* v. *Clark*, 5 Pick. (Mass.) 96 ; *Newton* v. *Newton*, 53 N. H. 537 ; *Boyd* v. *Boyd*, 1 Watts (Pa.) 365 ; *Braxton* v. *State ex rel. Albert*, 25 Ind. 82 ; *Probate Court* v. *May*, 52 Vt. 182. The question here at issue, however, is as to the liability of these defendants for the defaults of Spittler after the joint receivership had, by the court's substitution of his sole receivership, ceased to exist. The instrument, it is plain to all, was drafted in an attempt to adapt a form contained

in our rules as appropriate for a single receiver, to a situation where there was a joint receivership. Rules of Court, p. 24, § 52. In this attempt, words which would have made the liability unmistakably distributive as related to future appointments or confirmations, and made the bond a continuing security for the proper conduct of either of said temporary receivers in the event that he should by such appointment or confirmation become a receiver unassociated with his fellow, were unfortunately omitted. We have now to inquire whether this omission was otherwise supplied, so that, notwithstanding their absence, the bond is to be construed as though they were present.

It is easy to understand that $A$ might be willing to become surety for the faithful execution of a trust by $X$ and $Y$ acting jointly, when he might be quite unwilling to accept that responsibility for one of them acting alone, and that the obligation in the latter case might in fact be a much more serious one than in the former. We must look to the language of the present instrument to discover what the expressed willingness and intention of these obligors was. In doing so, it is to be borne in mind that it was drafted in pursuance of the rules of court and to conform thereto, and that the terms employed are all those to which our law has assigned a definite and unmistakable meaning. Rules of Court, p. 23, § 50 *et seq.* When, therefore, the condition, after reciting the appointment out of court of Spittler and Corbin as temporary receivers, prescribed the obligation assumed for the conduct of the appointees under that appointment and under any future confirmation or appointment as either temporary or permanent receivers, it was contemplating contingencies which were to be anticipated in the course of judicial action according to the prescribed routine, and attempting to provide for them as distinct situations. The liability of the obligors for the original period of temporary receivership was unmistakably conditioned upon an associated receivership. The language defining that liability for any succeeding periods of either temporary or permanent receivership

is singularly lacking in either expression or suggestion of a different conception.    There is nothing from which it can be inferred that the parties had in mind the possibility of a change from a joint administration of the trust to an administration by one of the then appointed receivers with the oversight of his fellow withdrawn.    Appropriate words of severance are not only absent, but the natural language both of association and of continuance of existing conditions is present.    Clearly we cannot, without importing into the instrument provisions which do not appear in it, say that its signers have therein expressed their intention and undertaking to become responsible for the faithful discharge of the duties of the receivership unless they should be administered by both Spittler and Corbin acting together.    A surety " is never answerable beyond the clear scope of his engagement."    *Lockwood* v. *Jones,* 7 Conn. 431, 435 ; *Parsons* v. *Williams,* 9 id. 236, 239.    " The contract of suretyship is construed strictly, both at law and in equity, and the liabilities of the surety cannot be extended by implication beyond the precise terms and scope of his engagement."    *Bulkeley* v. *House,* 62 Conn. 459, 470, 26 Atl. 352.

Counsel for the plaintiff further urge that, although the bond by its terms did not make the obligors liable for the *devastavit* of Spittler while acting as sole permanent receiver under the order so appointing him, yet as to Corbin it must now be held as imposing that liability.    This appeal to the principles of estoppel is made upon grounds variously stated in the brief.    In one place it is said that the reason is that he joined in having the bond continued in force by the court, reference being had, we assume, to the fact that he and Spittler made application for the appointment of a permanent receiver.    In another, the reason is stated to be that he did not require a new bond upon Spittler's appointment as permanent receiver.    In still another, his unspecified " conduct " is in general terms assigned as the ground for this claim.    We know of no conduct of Corbin which could be claimed as creating an

estoppel, besides that which has been referred to. There remain, then, as the only basis for the sought-for-estoppel, Corbin's application and what is termed his failure to require a new bond.

This so-called application by Spittler and Corbin was nothing more than the performance by the temporary receivers of a perfunctory duty required of them by § 51 of the Rules of Court, p. 23. In making it Corbin committed himself to no form of appointment, to the appointment of no person or persons, to nothing respecting the qualification of the appointee or appointees. Neither expressly nor by implication did he suggest a course of action to be pursued with the bond on file, or as to the scope or effect of that bond. He simply performed his duty and left, as he was entitled to do, the performance of the court's duty to it without recommendation, representation, or suggestion. As for his not requiring a new bond, that matter did not lie within the province of his duty either as receiver superseded, or individual bondsman. He was justified in assuming that the proper and lawful course would be taken in the qualification of his successor, and that no use would be attempted to be made of the bond bearing his signature which its terms did not justify. There can be nothing in any of these things to furnish a foundation for an estoppel.

No other reason is suggested by the plaintiff why either of the defendants should be held for Spittler's *devastavit*, and our diligent inquiries for such a reason have failed to disclose a satisfactory one.

There is error and the judgment against each of the appellants is reversed.

In this opinion the other judges concurred.