ANSON T. COLT vs. ROBERT REDFIELD AND OTHERS.

New Haven and Fairfield Cos., June T., 1890. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, JS.

Where the terms of the grant or reservation of an easement are general
and ambiguous, the contemporaneous acts of the parties giving a prac-
tical construction to it will be deemed to be a just exposition of their
intent; and after the easement has been located and confirmed by both
parties, it cannot afterwards be shifted at the pleasure or convenience
of one of them.

But where land which was conveyed subject to a reservation in general
terms of a right of way over it, was crossed by several paths, two or
more of which were practically of equal convenience to the owner of
the easement, and it was understood when the reservation was made
that the servient land was to be used for quarrying purposes and de-
pended for its main value upon such use, and the paths were irregular
and such as are generally found in rough quarry lands over which per-
manent paths are not usually laid out, but it is customary to open and
close them as convenience and the profitable operation of the quarry
require, and no particular path was designated at the time, it was held
that the fact that a particular path was used immediately after the ex-
ecution of the deed and until it was destroyed five years later by the
quarrying operations of the owner of the servient estate, such use not
interfering with the convenience of the latter, would not be conclusive
of the meaning of the reservation.

[Argued June 4th—decided September 12th, 1890.]

ACTION for obstructing a right of way; brought to the Court of Common Pleas of New Haven County, and tried to the court, on a general denial, before *Studley, J.* Facts found and judgment rendered for the defendants, and appeal by the plaintiff. The case is fully stated in the opinion.

*R. S. Pickett*, for the appellant.

The conveyances and reservations should be considered and construed together, by the light under which the parties made them, and in view of their manifest purposes and the facts and circumstances surrounding and pertaining to them, which existed at, and immediately subsequent to, the time they were made. *French* v. *Hayes*, 43 N. Hamp., 30; *Gardner* v. *Webster*, 64 id., 520; *Walker* v. *Pierce*, 38 Verm., 94; *Salisbury* v. *Andrews*, 19 Pick., 250; *Mendell* v. *Delano*, 7 Met., 176; *Brown* v. *Thissell*, 6 Cush., 254; *Lewis* v. *Beattie*, 105 Mass., 410; *Baker* v. *Frick*, 45 Maryl., 337. By the division of the premises, formerly owned in common by the parties, as shown by the conveyances in question, the plaintiff's land became pent-land, to and from which he had no right of passage from and to any highway, unless he reserved such right of way in his conveyance to Redfield, or purchased it from some other surrounding proprietor. He chose to reserve it, for the purposes named in the reservation. Is it probable that, when he made the conveyance containing the reservation, he intended thereby to surrender the right to use the nearest, easiest, apparent, long-used and established easterly driveway, (found to be such by the court,) or subject himself, at the pleasure or convenience of Redfield or his grantees, to be shut out from access to his premises by that way, and only have access thereto by a longer and more difficult way, or by any way between the nearest highway and his land which would be over the land of other parties? The purposes for which the right of way was reserved are distinctly set forth in the reservation clause in the deed, to wit: "reserving however to myself, my heirs and assigns, the right of crossing and re-crossing both said described pieces of land, for all necessary purposes, in quarrying and carting stone and all other products of my adjoining land." It appears by the finding that, by the most feasible of the other ways, the plaintiff, in using his land for quarrying and carting stone therefrom, for which it is found chiefly valuable, would have to haul the stone up an elevation of twenty-three feet, over a rough road, to a

high crest of land, and then down a descent much longer and about thirty feet greater than by the easterly way, and partly over the land of another adjoining proprietor, while by the easterly way there is no perceptible grade up which stone would have to be hauled. That the plaintiff, when he made the reservation, contemplated that he could be compelled to abandon the shortest and most feasible, ancient, and apparent way for the transportation of the heavy product of his land and to resort to such a way as this, cannot be reasonably presumed or supposed; and it is evident that neither Redfield nor the other defendants, then or for a long time afterwards, contemplated the destruction of or any interference with the east way, for, if they had, they would not have continued to quarry alongside of the same way, and permitted and acquiesced in the use of the same by the plaintiff and his lessees, down to the time they broke up the way, and prevented the further use of the same by the plaintiff; which permission and acquiescence covered a period of five and one half years. Under the law such use of the way by the reservee, with the acquiescence of the holder of the fee of the land, immediately following the reservation of a way, marks the intent of the party who made the conveyance containing the reservation, and manifests the concurrence therewith of the party who received and accepted it. Washb. on Easements, 4th ed., 264; *Phillips* v. *Phillips*, 48 Penn. St., 178; *Kroat's Appeal*, 71 id., 64; *Warner* v. *R. R. Co.*, 39 Ohio St., 70; *Stone* v. *Clark*, 1 Met., 378; *Newell* v. *Hill*, 2 id., 180; *Bannon* v. *Angier*, 2 Allen, 128. The same rule holds good as to land which has been held in common or by any unity of possession. Washb. on Easements, 4th ed., 690, 697; *Bowen* v. *Connor*, 6 Cush., 132; *Killion* v. *Kelley*, 120 Mass., 47; *Kieffer* v. *Imhoff*, 26 Penn. St., 438; *McCarty* v. *Kitchenman*, 47 id., 239; *Brown* v. *Berry*, 6 Coldwell, 98. By the reservation in question the most convenient and apparent way, although not defined and described, was secured to the reservee as if by grant of Redfield, and the defendants had no legal right to destroy the way, or in any way de-

prive the plaintiff of the use of it, without his knowledge or consent, and thereby cause him to resort to another and more difficult way, which could only result to his damage in working or leasing his quarry land, and in the depreciation of the value thereof.    Washb. on Easements, 4th ed., 34, 35, 55; *Hart* v. *Connor*, 25 Conn., 331; *Jennison* v. *Walker*, 11 Gray, 423; *Smith* v. *Lee*, 14 id., 473; *Wynkoop* v. *Burger*, 12 Johns., 222; *Garraty* v. *Duffy*, 7 R. Isl., 476; *French* v. *Carhart*, 1 Comst., 96.

*T. H. Russell*, for the appellee.

Seymour, J.    In dividing lands theretofore held in common, the plaintiff made a deed of two tracts to the defendant, Robert Redfield, with the following reservation : " Reserving however, to myself, my heirs and assigns, the right of crossing and recrossing both of said described pieces of land for all necessary purposes in quarrying and carting stone and all other products from my adjoining land."

The described land is rough and uneven, thinly covered with growing timber and brush, and of little value except for quarrying purposes, for which it has been used from time to time for the last forty years.    Crossing it were irregular and winding cart-paths, such as are generally found in rough quarry-land, where permanent roads are not usually laid out but cart-paths come into use and are changed about as convenience may require.    One path, called the west branch, has been much used during said period by most of the quarrymen, who have worked on this and the adjoining lands, in hauling their products to market.    It has a hard, rocky foundation, is easily kept in repair, can be used during all seasons of the year, is as convenient and practicable as roads in and about quarry-lands usually are, and is a reasonably practicable and convenient path for all necessary purposes named in the reservation.    Another path, called the east branch, was a good hard path and more practicable and convenient than the west branch during the dry seasons of the year, but during wet seasons it became soft and imprac-

ticable. When the deed was executed it was the intention of the grantor, who owned adjoining land, and of the grantee, to develop their respective lands into quarries.

Neither the east nor the west branch, nor any other path, was pointed out or designated in any manner by the parties in connection with the reservation. The east branch passes over that portion of the defendants' land which is most valuable for quarrying purposes. In quarrying the defendants have cut into said east branch and carried away the stone to such an extent as to render it impracticable and of no use as a pathway; and it is for this claimed interference with his rights that this suit is brought.

The plaintiff claimed upon the trial "that, by the reservation in said deed to Robert Redfield, he retained the right to cross the land of Redfield for the purposes in the deed set forth, by said ancient easterly driveway, which at the time of said reservation long had been, then was, and, up to the time when the same was broken up by the defendants, continued to be, used as the means of access to the land of the plaintiff, notwithstanding the said driveway was not definitely located and described by the terms of such reservation; that neither the convenience of the defendants in working said quarry from west to east, nor the profits and advantage to them resulting from the removal and marketing of said stone underlying said easterly driveway, justified them in breaking up and destroying said driveway and depriving the plaintiff of the use of the same." The court overruled said claims and rendered judgment for the defendants, and the plaintiff appealed.

The plaintiff's claim assumes that what he calls the ancient easterly driveway, was, at the time of the reservation, long had been, and, up to the time when it was broken up by the defendants, continued to be used as the means of access to the land of the plaintiff. His argument is very largely based upon a suggested use of the way by him, with the acquiescence of the defendants, immediately following the conveyance and continued up to the time of its obstruction by the defendants. He claims that such use not only indicates the

intention of the parties, but marks and defines his right of way.

It is undoubtedly true that where the terms of the grant or reservation of an easement are general and ambiguous, the contemporaneous acts of the parties giving a practical construction to it will be deemed to be a just exposition of their intent. And after the easement has been located and confirmed by both parties, it cannot afterwards be shifted at the pleasure or convenience of one of them. But do the facts in this case bring the plaintiff within the terms or the reason of this rule ?

The reservation in the plaintiff's deed is general, but not therefore necessarily ambiguous. There is no reservation in terms of any particular way. It is a general right of crossing and re-crossing. The plaintiff argues that, under the circumstances of the case, the general terms used indicate that the real meaning of the deed and the intention of the parties will be reached by implying the additional words " by the existing ways " or words equivalent thereto. But is it not more natural to suppose, in view of the fact that the reservation was made in such general terms, although there were several cart-paths in existence, and in further view of the known temporary character of such paths and the custom of changing them from time to time to meet the exigencies of the quarrying business, that it was the intention of the parties not to limit the crossing and re-crossing to any particular place, but to leave it where, all things considered, it was natural and fair to leave it, so that the plaintiff would be reasonably convenienced without depriving the defendants of the use of the most valuable portion of the land for quarrying purposes and subjecting them to great loss, as the court below finds that the construction insisted upon by the plaintiff would do.

Where the land subjected to a reservation like the one under consideration is crossed by several paths, two or more of which are practically equally convenient, and it is understood when the reservation is made that the land is to be used for quarrying purposes and depends for its main value

upon such use; where the paths are irregular and winding, such as are generally found in rough quarry lands, over which permanent roads are not usually laid out, it being customary to shift them about and to open and close them as convenience and the profitable operation of the quarry require; the fact that a particular path was used, immediately subsequent to the execution of the deed, so long as such use did not interfere with the convenience of the owner of the servient estate, would not be conclusive of the meaning of the reservation.

But in this case we look in vain in the finding for any intimation that there were any acts of the parties contemporaneous with the deed, or immediately following it, to sustain the plaintiff's claim. The west way, to briefly recapitulate, has been much used for forty years by most of the quarrymen who have worked on all of the lands in hauling their products to market and is a reasonably practicable and convenient path for the plaintiff's use. It is as convenient and practicable as roads in and about quarry lands usually are, it can be used during all seasons of the year, and its use can never interfere with the convenience or profit of the defendants, as the western portion of the land is useless except for roads. The way in dispute has a good hard bed during the dry seasons, and is then more practicable and convenient than the west way, but during wet seasons is wet and impracticable. There is no finding that the plaintiff has used the west way at all since the date of the deed. The facts show that he has had little occasion to use any path. The value of his quarry depends largely upon the success of the defendants' operations, which, in turn, depend upon their right to quarry regardless of the east path. The facts in the case seem to furnish no ground for the principles of law which the plaintiff invokes to operate upon.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.